UNITED STATES DISTRICT COURT
EEASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RISHANA TILLMAN,

          Plaintiff                Case Number 19-12860
                                                  Honorable David M. Lawson
v.

EQUIFAX INFORMATION
SERVICES, LLC, MICHIGAN
FIRST CREDIT UNION, and
SECURITY AUTO LOANS, INC.,

          Defendants.
_____/

**OPINION AND ORDER DENYING MOTION TO DISMISS
BY DEFENDANT MICHIGAN FIRST CREDIT UNION**

      Defendant Michigan First Credit Union has moved to dismiss a complaint brought by plaintiff Rishana Tillman under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.* The Credit Union argues that the complaint fails to make out a cause of action under that statute and therefore must be dismissed under Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and oral argument will not aid in its disposition. Therefore, the motion will be decided on the briefs. *See* E.D. Mich. LR 7.1(f)(2). Because the complaint states facts supporting a plausible claim under the FCRA, the motion will be denied.

I.

      Because this is a motion to dismiss, the facts recited below are stated as they are alleged in the plaintiff's complaint.

      Rishana Tillman resides in Wayne County, Michigan. She had an account with Michigan First Credit Union, but her complaint alleges that it was "charged off and closed," and that she no longer has any payment obligation on the account. Compl. ¶ 8. Nevertheless, the Credit Union

has continued to report the account to Equifax with a $442 monthly payment due. The plaintiff contends that the account should be reported with a monthly payment of $0 since there is no balance or payment obligation.

In June 2019, Tillman sent a dispute letter to Equifax reporting the erroneous trade line, and the letter was forwarded to the Credit Union. However, the Credit Union responded that its reporting was accurate and refused to correct the report.

Tillman then filed her lawsuit in state court in August 2019. Counts I and II of the complaint plead negligent and willful violations of the FCRA by the Credit Union due to its alleged failure properly to investigate the dispute and correct its reporting. The Credit Union removed it to this Court on October 1, 2019 and filed its motion to dismiss two days later.

The defendant argues that the plaintiff (1) has not sufficiently alleged that the trade line is "misleading," because in her complaint she does not identify any creditor that actually was misled by the reported information, (2) does not plead any specific facts to identify what relevant information the defendant "failed to review" during its allegedly deficient investigation, and (3) does not plead any specific facts to support the vague allegation that she suffered emotional damages in the form of "mental anguish, humiliation, and embarrassment."

II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556

U.S. at 678). When reviewing the motion, the Court "must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* at 951 (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

"Congress enacted [the Fair Credit Reporting act (FCRA), 15 U.S.C. § 1681 *et seq.*,] in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). The FCRA requires consumer credit reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of' consumer credit reports." *Buchholz v. Meyer Njus Tanick, PA*, No. 18-2261, --- F.3d ---, 2020 WL 35431, at *3 (6th Cir. Jan. 3, 2020) (quoting 15 U.S.C. § 1681e(b)). "The statute provides consumers with a cause of action if a consumer reporting agency violates their statutorily created procedural rights." *Ibid.* "Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information; and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished." *Scott v. First Southern National Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (quotations omitted).

"The FCRA creates a private right of action for consumers to enforce the requirement under § 1681s-2(b) that furnishers of information investigate upon receiving notice of a dispute, but not the requirement under § 1681s-2(a) that furnishers of information initially provide accurate information to consumer reporting agencies." *Ibid.* Thus, "consumers must file a dispute with a

consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s-2(b)." *Ibid.* "After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the reporting entity must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly —
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

*Pittman*, 901 F.3d at 628 (quoting 15 U.S.C. § 1681s-2(b)(1)).

The "FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)." *Ibid.* A "consumer is permitted to demonstrate that a furnisher negligently breached one of these duties, under § 1681o, or willfully breached one of them, under § 1681n." *Ibid.* Regardless of the particular breach alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Id.* at 629. Thus, the required elements of a viable claim of inaccurate reporting are: "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004).

A.

The plaintiff has pleaded sufficient facts to establish the threshold allegation that the trade line reported by the Credit Union was either false, incomplete, or misleading. "To meet this threshold showing, a plaintiff can show that the information provided is false or that it contains a material omission or creates a materially misleading impression." *Pittman*, 901 F.3d 630. Here, the plaintiff plainly alleged that the defendant reported an account that was "closed" and "charged off" as having a "monthly payment amount of $442." Compl. ¶¶ 7-8. Federal courts readily have concluded that such reporting is inaccurate and misleading because it creates the implication that the consumer has an obligation to make payments on an account that in fact has no balance outstanding and no payments due.

Allegations of inaccuracy are sufficient where the reported data allegedly "listed a balance owed even though the account was closed or charged off," and "failed to report that the account had been discharged or closed." *Franklin v. Trans Union, LLC*, No. 19-0888, 2019 WL 6871254, at *3 (C.D. Cal. Oct. 8, 2019); *see also Pittman*, 901 F.3d at 639 ("Reporting that Pittman was delinquent on his loan payments without reporting the [loan modification] implies a much greater degree of financial irresponsibility than was present here. And the existence of and Pittman's compliance with the terms of the TPP is relevant information about the status of his mortgage loan. Without this information, the Servicers' reporting was incomplete.").

Contrast those allegations with a report of an "historical" monthly payment amount listed on a trade line along with information plainly stating that an account had been charged off and closed with a zero balance. In those circumstances, the reporting of the previously scheduled monthly payment has been held not to be inaccurate or misleading. *Franklin*, 2019 WL 6871254, at *3 ("Trans Union's credit disclosures state that the accounts are charged off or closed, and have

a zero balance. Therefore, the reporting of historical monthly payment terms on a closed or charged off account with no balance does not imply Plaintiff has an ongoing obligation to make monthly payments on the account. Therefore, the credit disclosures are not inaccurate for purposes of FCRA because they are neither 'patently incorrect' nor 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'") (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)); *Seay v. Trans Union, LLC*, No. 18-204, 2019 WL 4773827, at *5 (M.D. Ga. Sept. 30, 2019) ("In this case . . . Plaintiff's Trans Union credit report very plainly shows that the Shamrock account is closed with a $0.00 and that there is no future obligation to make any payment. There is no inaccuracy or misleading information in the reporting, and Plaintiff has not demonstrated otherwise."); *Her v. Equixfax Info. Servs., LLC*, No. 18-5182, 2019 WL 4295279, at *2 (N.D. Ga. Aug. 9, 2019) ("Trans Union did not report inaccurate information regarding Plaintiff's credit to a third party, as the Trans Union credit file clearly shows that the Prosper account was being reported as closed, charged off, transferred to another office, and having a $0 balance. Considering the entirety of Trans Union's reporting on its face, the inclusion of the accurate, historical monthly payment amount in the 'terms' section is not misleading and creates no confusion that a current monthly obligation existed.").

But that is not what is alleged here. In this case there are no facts pleaded to suggest that the reporting included any notation that the account was charged off, closed, and had a zero balance. Nor is any specimen of any credit report attached to the pleadings. The Court must consider the facts alleged in the complaint without resort to matters outside the pleadings, and, so far as they go, nothing in the pleadings suggests that the reporting completely reflected the status of the plaintiff's account with the defendant.

*Hamilton v. Equifax Info. Services, LLC*, on which the Credit Union heavily relies, readily is distinguishable. In that case, the pleadings incorporated credit disclosure reports which plainly indicated the status of the disputed account as "discharged," "included in bankruptcy," and with a zero balance. 2019 WL 3864742, at *5 (E.D. Mich. Aug. 16, 2019) ("Trans Union's credit disclosures both indicate that Hamilton's Synchrony and Michigan First accounts have no account or past due balances and note that her Chapter 7 Bankruptcy is 'discharged.' Further, Trans Union's credit disclosures state that Hamilton's Synchrony and Michigan First accounts are 'included in bankruptcy.' The Court is satisfied that Trans Union's credit disclosures are technically accurate since they are accurate on their face and reveal that Hamilton's Synchrony and Michigan First accounts have been discharged.").

The complaint sufficiently alleges that the trade line is "misleading"; there is no requirement that the plaintiff identify an actual creditor that was misled by the reported information.

B.

Likewise, the plaintiff sufficiently has alleged that the Credit Union conducted an inadequate investigation. "At the motion to dismiss stage, the court [is] required to accept all of [the plaintiff's] allegations as true *and to make reasonable inferences based upon them*." *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 758 (6th Cir. 2019) (emphasis added). Here, the Court fairly may infer from the pleaded facts that the Credit Union knew that the plaintiff's account was closed and charged off, with a zero balance, and it was informed that the trade line was reported with a monthly payment obligation, but the Credit Union nevertheless failed to correct the inaccurate reporting.

For the purpose of this motion, at least, the defendant does not dispute the allegation that the account was closed with a zero balance. There are no pleaded facts suggesting otherwise. The defendant also does not dispute, and at this stage it cannot contest, the pleading that a monthly payment obligation of $442 was indicated on the credit report. Contrary to the Credit Union's position, the plaintiff is not required at the pleading stage to recite an exhaustive inventory of information overlooked or a litany of steps not taken by the defendant during its investigation. Such a requirement would hold plaintiffs to an impossible standard of pleading, since information about the conduct of the investigation is at this stage of the case exclusively within the knowledge of the defendant. *Burns v. Trans Union, LLC*, No. 18-03120, 2019 WL 3890833, at *3-4 (D.S.C. Aug. 19, 2019) ("As a consumer, Burns is unable to plead Warehouse's specific errors during their internal investigation without discovery. . . . [The defendant urges] this Court to impose an impossible pleading standard, as [the plaintiff] cannot know investigative procedures between Warehouse and the consumer reporting agencies until [she] engages in discovery [and] [This standard] would prevent any consumer from filing any lawsuit under the FCRA, as virtually no consumer would or could know such facts before engaging in discovery. The Court agrees with Burns and holds her factual statement requesting relief is adequate in light of the limited information available to her at this stage of litigation." (quotations omitted)).

The question whether the investigation was reasonably thorough is an issue of fact for the jury, taking into account all of the circumstances that may be uncovered by discovery. *Pittman*, 901 F.3d at 639 ("Because both of the Servicers knew about the TPP and because Pittman has produced a number of emails by and between the Servicers admitting that Pittman should have received a permanent modification, we think there is a genuine issue of material fact as to whether

the Servicers conducted a reasonable investigation to determine whether the disputed information could be verified."). The plaintiff has pleaded enough here to advance to that stage of the case.

C.

Finally, the plaintiff adequately has identified the emotional distress damages that she contends she suffered as a result of the Credit Union's inaccurate reporting. The plaintiff alleged in her complaint that she "has suffered credit and emotional damages," comprising "undue stress and anxiety due to Defendant's failure to correct her credit file," because the inaccurate reporting has impaired her ability to "improve her financial situation by obtaining new or more favorable credit terms." Compl. ¶ 20. That is sufficient both to identify the nature of the damages and the causal connection with the inaccurate reporting, which the plaintiff says impaired her ability to procure new or more favorable credit terms. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1212-13 (11th Cir. 2019) ("JPMorgan Chase also argues Mr. Pinson did not adequately allege damages. It misses the mark with that argument, too. Mr. Pinson plausibly alleged actual damages resulting from the failure to investigate. As we set out [above], he says he suffered from mental anguish, lost credit opportunities, paid higher auto insurance premiums, and spent time and money trying to correct the falsehood on his credit report. Mr. Pinson is entitled to compensation if he can prove his claims.").

Contrary to the defendant's position, "'[d]istress,' including 'mental suffering or emotional anguish,' 'is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.'" *Buchholz v. Meyer Njus Tanick, PA*, No. 18-2261, --- F.3d ---, 2020 WL 35431, at *12 (6th Cir. Jan. 3, 2020) (quoting *Carey v. Piphus*, 435 U.S. 247, 263-64 & n.20 (1978)) (Murphy, J., concurring). Moreover, the Sixth Circuit has noted that circuit law "counsels against dismissal of . . . claims on the basis of inartfully-pleaded

actual damages." *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 722 (6th Cir. 2013) (holding that pleading of damages for RESPA violation was sufficient where the plaintiff's complaint demanded only "actual damages"); *see also Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) ("Houston also alleges financial and emotional damages arising from the violation, which the district court did not address. She has averred that she suffered 'stress, mental anguish, embarrassment, and humiliation,' because of U.S. Bank's violation, and not merely because of the foreclosure. We conclude that there is a genuine issue of material fact as to whether Houston suffered damages as a result of U.S. Bank's RESPA violation."). The damages described here are identified in nature and connected causally to the alleged reporting violation sufficiently to pass muster at this initial pleading stage.

The Credit Union cites a single unpublished district court decision for the proposition that mere allegations of stress and anxiety without more are insufficient to qualify as adequate pleading of damages for an FCRA claim. *See Yeska v. Experian Information Solutions, Inc.*, No. 16-12395, 2016 WL 7674783, at *5 (E.D. Mich. Dec. 21, 2016), *report and recommendation adopted*, No. 16-12395, 2017 WL 85830 (E.D. Mich. Jan. 10, 2017) ("Plaintiff has not alleged any specific financial harm nor has he alleged any specific incidents showing emotional distress type harm. Failure to include 'specific facts' sufficient to put the defendant on notice of the alleged damages growing out of their alleged negligent violation is fatal."). But that case readily is distinguishable because the court there noted that the plaintiff also did not allege any "specific financial harm." Tillman has asserted that she lost opportunities to procure new or more favorable credit terms as a result of the inaccurate reporting.

III.

The defendant has not identified any defect in the plaintiff's allegations that is sufficiently fatal to render her claims implausible at this initial pleading stage.

Accordingly, it is **ORDERED** that the motion to dismiss by defendant Michigan First Credit Union (ECF No. 5) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date:   January 16, 2020

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on January 16, 2020.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI