UNITED STATES DISTRICT COURT
EEASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RISHANA TILLMAN,

                 Plaintiff                             Case Number 19-12860
                                                          Honorable David M. Lawson

v.

MICHIGAN FIRST CREDIT UNION, and
SECURITY AUTO LOANS, INC.,

                 Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM AND DISMISSING COUNTERCLAIM WITHOUT PREJUDICE

       In this Fair Credit Reporting Act case, plaintiff Rishana Tillman moves to dismiss a counterclaim asserted by defendant Michigan First Credit Union seeking collection of an underlying debt. There is no independent basis for subject matter jurisdiction over the counterclaim, and the Court will not exercise supplemental jurisdiction. Because the motion is fully briefed and oral argument will not assist in its disposition, the Court will decide the motions on the papers. *See* E.D. Mich. LR 7.1(f)(2). The motion to dismiss the counterclaim without prejudice will be granted.

I.

       In January 2017, Rishana Tillman borrowed money to buy a used car from Taylor Chevrolet, which arranged the loan and completed a retail instalment contract that called for monthly payments of $442.05. The car dealer assigned the contract to defendant Michigan First Credit Union. Tillman fell behind on her payments and eventually received a discharge in bankruptcy court, which included the debt to Michigan First. However, that account, including

the monthly payment obligation, continues to appear on Tillman's credit report, and Michigan First insists that the tradeline is accurate.

Tillman filed a complaint in the Wayne County, Michigan circuit court alleging violations of her rights under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* She acknowledged that she had an account with Michigan First Credit Union, but her complaint alleged that it was "charged off and closed," and that she no longer has any payment obligation on the account. Nevertheless, Michigan First has continued to report the account to Equifax with a $442 monthly payment due. The plaintiff contends that the account should be reported with a monthly payment of $0 since there is no balance or payment obligation. In June 2019, plaintiff sent a dispute letter to Equifax reporting the erroneous tradeline, and the letter was forwarded to Michigan First. However, Michigan First responded that its reporting was accurate and refused to correct the report. Counts I and II of the complaint plead negligent and willful violations of the FCRA by Michigan First due to its alleged failure properly to investigate the dispute and correct its reporting.

Defendant Michigan First removed the case to this Court and filed a motion to dismiss two days after the case was removed. The Court denied that motion after finding that the complaint made out an adequate factual basis for the plaintiff's claims of negligent and willful reporting violations.

Michigan First then answered the complaint and filed a permissive counterclaim, contending that Tillman reaffirmed the car loan debt, and it seeks to collect the balance due. It alleges that in January 2017 Tillman executed a contract for an auto loan covering the purchase of a 2014 Chevrolet Malibu from Taylor Chevrolet, Inc. The agreement required Tillman to make 72 monthly payments of $442.05 starting in February 2017. The loan subsequently was assigned

to Michigan First.  Tillman declared bankruptcy and was granted a discharge that included the auto

loan.  However, Michigan First contends that Tillman signed a post-discharge reaffirmation

agreement in which she agreed to repay a remaining balance of more than $19,000 on the loan.

Tillman allegedly failed to make the required payments, and Michigan First contends that she still

owes it more than $8,700.

Tillman moves to dismiss the counterclaim, arguing that the Court should not exercise

supplemental jurisdiction over that claim.

II.

Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack

of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  "A Rule

12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading

itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Ibid.*

(citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).  Tillman bases her motion on

the pleadings.  The party invoking the Court's jurisdiction — here, the defendant and counter-

plaintiff — "bears the burden of establishing that subject matter jurisdiction exists."  *Id.* at 760

(citing *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

The plaintiff's complaint is brought under the Fair Credit Reporting Act, a federal statute

that creates the cause of action, and therefore the Court has subject matter jurisdiction over those

claims.  28 U.S.C. § 1331; *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).

("The FCRA creates a private right of action for consumers to enforce the requirement[s]" of the

Act.).  The counterclaim is based on state law and raises no substantial federal question; therefore,

there is no federal question jurisdiction over that claim.  *Eastman v. Marine Mech. Corp.*, 438 F.3d

544, 550 (6th Cir. 2006).  The amount in controversy stated in the counterclaim is less than

-3-

$75,000, and therefore Michigan First cannot rely on diversity of citizenship as a basis of federal subject matter jurisdiction. 28 U.S.C. § 1332(a). There is no independent basis for exercising federal jurisdiction over the counterclaim.

However, "[t]he Supplemental Jurisdiction statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims 'are so related to claims . . . within [federal-court competence] that they form part of the same case or controversy.'" *Artis v. D.C.*, --- U.S. ---, 138 S. Ct. 594, 597 (2018) (quoting 28 U.S.C. § 1367(a)). Included within the supplemental jurisdiction authority are state-law-based claims and counterclaims "brought along with federal claims arising from the same episode." *Ibid.*; *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016).

The Supplemental Jurisdiction statute, however, is not a mandatory command. "A district court may . . . dismiss the related state claims if there is a good reason to decline jurisdiction." *Artis*, 138 S. Ct. at 597 (citing 28 U.S.C. § 1367(c)(1), (2), and (4)). Section 1367(c) allows a district court to dismiss pendent a state law claim "if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.'" 28 U.S.C. § 1367(c).

Counterclaims may be compulsory or permissive. A compulsory counterclaim by definition "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). If the claim does not require adding another party, a defendant must bring the counterclaim in the action or risk losing it "forever." Fed. R. Civ. P. 13(a)(1); *Bauman v. Bank of America, N.A.*, 808 F.3d 1097, 1101 (6th Cir. 2015) (quoting *Sanders*

*v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991)).  A permissive counterclaim is any other claim a defendant may have against a plaintiff, Fed. R. Civ. P. 13(b), but, as noted above, unless there is an independent basis for subject matter jurisdiction, it also must "form part of the same case or controversy" as the original complaint.  28 U.S.C. § 1367(a).

The Sixth Circuit has held that a counterclaim for collection on a debt is not compulsory in an action by a debtor under the FDCPA.  *Bauman*, 808 F.3d at 1102-03.  The *Bauman* court observed that "to [establish] that [an action on a debt] is a compulsory counterclaim to [a] FDCPA action, [a party] must first show that the two claims 'arise' out of the same transaction or occurrence"; however, "[r]ather than look to whether the original claim and counterclaim literally arise out of the same transaction or occurrence, [the Court] ask[s], '[i]s there a logical relationship between the two claims?'"  *Ibid.* (quoting *Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 382 (6th Cir. 1984)).  "Under this test, [the Court must] determine whether the issues of law and fact raised by the claims are *largely the same* and whether *substantially the same evidence* would support or refute both claims.  A partial overlap in issues of law and fact does not compel a finding that two claims are logically related."  *Ibid.* (citations and quotations omitted).  Endorsing the policy rationale advanced by the plaintiff here, the court reasoned that deeming debt collection counterclaims to be compulsory would require their presentment in every FDCPA action where an action for collection could lie, and that imperative would have a chilling effect on the filing of FDCPA claims, based on debtor plaintiffs' fears of liability on lurking collection claims.  *Id.* at 1102 ("A contrary finding would prevent many FDCPA defendants who fail to bring foreclosure actions as a counterclaim from later bringing the actions in state court. Such a rule could systematically usurp these state law debt claims from adjudication by the state courts. Such a rule would also require lenders to initiate foreclosure proceedings as a counterclaim when they

otherwise may not have done so, frustrating the purposes of the FDCPA by creating for debtors a disincentive to sue.") (citations and quotations omitted).

Nonetheless, federal courts have had little trouble finding that supplemental jurisdiction is proper over counterclaims like the one pleaded here where the underlying dispute is between a creditor that says a debt still is owed and a borrower who says it is not, even though there might be some mutually exclusive elements of proof in the competing causes of action. *Cronin v. CitiFinancial Services, Inc.*, 352 F. App'x 630, 636 (3d Cir. 2009) ("[W]e disagree with the premise that the claims are not sufficiently factually related for the exercise of supplemental jurisdiction. Both the FCRA claim and the breach of contract counterclaim share a common nucleus of operative fact because they both turn on the terms of the written loan agreement between CitiFinancial and Cronin. Although Cronin argues the claims are unrelated because their legal elements differ, the legal differences do not affect whether the claims share a common nucleus of *fact*.").

The plaintiff takes no issue with that premise. Instead, relying primarily on *Barrios v. Equifax Info. Servs., LLC*, No. 19-5009, 2020 WL 2046395, at *4 (C.D. Cal. Feb. 14, 2020), she contends that "exceptional circumstances" weigh in favor of declining jurisdiction under 28 U.S.C. § 1367(c)(4), because "exercising supplemental jurisdiction over the breach of contract [c]ounterclaim would chill the litigation of FCRA claims, and . . . the breach of contract [c]ounterclaim would substantially predominate" in the course of the litigation since it might give rise to numerous other disputes over the propriety of issuance of the loan. *Id.* at *5 (collecting cases). Other federal courts have observed that "[t]he threat of a debt collection case may quell attempts to assert FRCA rights," and, therefore, "[s]trong public policy is well served to prevent chilling effects of litigating FRCA claims with claims to collect underlying debt to establish

exceptional circumstances to decline supplemental jurisdiction over [a creditor's] debt collection counterclaim." *Witt v. Experian Info. Sols., Inc.*, No. 08-0553, 2008 WL 2489132, at *5 (E.D. Cal. June 16, 2008).

Contrary to Michigan First's argument, the claims and counterclaim do not present two sides of the same coin. Tillman contends that Michigan First's reported tradeline is inaccurate and misleading because the debt was charged off and the monthly payment should be zero, regardless of whether she reaffirmed the debt itself. That has little to do with whether she has a balance owing on the reaffirmed obligation, as the counterclaim alleges. The defenses to the breach of contract claim, whatever they may be, will not overlap with the plaintiff's affirmative proofs showing that Michigan First failed to conduct a proper investigation and modify or delete the erroneous information, as it must do following an inquiry. *See* 15 U.S.C. § 1681s-2(b)(1); *Scott v. First Southern National Bank*, 936 F.3d 509, 517 (6th Cir. 2019) ("Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information; and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished.") (quotation marks omitted). The parties to the claims and counterclaim may be the same, but the causes of action are appreciably different. Entertaining the counterclaim would allow the breach of contract dispute to predominate over the FCRA claims.

The Court also is persuaded by the reasoning in *Barrios*, which cautioned against chilling the rights of FCRA claimants by allowing creditors to turn such cases into federal collection actions. "Congress enacted [the Fair Credit Reporting act (FCRA), 15 U.S.C. § 1681 *et seq.*,] in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Pittman*, 901 F.3d at 628. "The FCRA requires consumer credit reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of'

consumer credit reports." *Buchholz v. Meyer Njus Tanick, PA*, No. 18-2261, --- F.3d ---, 2020 WL 35431, at *3 (6th Cir. Jan. 3, 2020) (quoting 15 U.S.C. § 1681e(b)).  That congressional policy is not advanced by allowing a marginally related counterclaim on an underlying debt in an action that challenges only the way that obligation is reported.  Exceptional circumstances weigh in favor of declining the invitation to exercise supplemental jurisdiction.

The defendant's authorities do not hold contrary to that result, because, as the plaintiff correctly points out, in the defendant's principal competing case, *Wingo v. Experian Info. Sols., Inc.*, No. 17-11275, 2017 WL 3765784 (E.D. Mich. Aug. 9, 2017), *report and recommendation adopted,* No. 17-11275, 2017 WL 3727399 (E.D. Mich. Aug. 30, 2017), where the court denied a motion to dismiss, the plaintiff did not mount any argument for declining jurisdiction under section 1367(c)(4) based on "exceptional circumstances."  Nor does any of the reasoning in that decision run counter to the discussion in *Barrios* or the cases that it surveyed concerning the chilling effects of permitting such discretionary counterclaims to be tacked onto routine consumer credit actions.

Correctly noting that the dismissal of the counterclaim without prejudice would allow it to refile it in state court, Michigan First contends that dismissing the counterclaim will chill FCRA claimants by requiring them to litigate in two separate forums.  Perhaps.  But it is the plaintiff who initially chose a state forum to bring her federal causes of action; it was this defendant that brought the case to federal court and then attempted to assert a purely state-law claim.  If inefficiencies result, it is solely the defendant's doing.

III.

The Court will decline to exercise supplemental jurisdiction over the counterclaim under 28 U.S.C. § 1367(c).  The counterclaim will be dismissed without prejudice.

Accordingly, it is **ORDERED** that the plaintiff's motion to dismiss the counterclaim (ECF No. 21) is **GRANTED**.  The counterclaim is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   August 5, 2020