UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RISHANA TILLMAN,

                Plaintiff                              Case Number 19-12860
                                                        Honorable David M. Lawson

v.

MICHIGAN FIRST CREDIT UNION, and
SECURITY AUTO LOANS, INC.,

                Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT MICHIGAN FIRST CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION FOR SANCTIONS

The Court previously denied defendant Michigan First Credit Union's (MFCU) motion to dismiss this case because it found that the plaintiff Rishana Tillman plausibly pleaded a violation of the Fair Credit Reporting Act when she alleged that the defendant's tradeline reporting of an obligation for monthly payments on a charged-off loan (following a bankruptcy discharge) was patently incorrect. Now that discovery had been completed, the documentary evidence presents the full picture of the challenged tradeline that no reasonable juror could find is inaccurate or incorrect. Because the undisputed facts show that the plaintiff cannot establish an essential element of her claim, the Court will grant MFCU's motion for summary judgment and deny the plaintiff's motion for summary judgment.

MCFU also moved for sanctions against the plaintiff and her attorney under Federal Rule of Civil Procedure 11 because courts in this and other districts have rejected the plaintiff's theory of liability. However, the Court previously found that the plaintiff pleaded a viable claim, and the

cases on which the defendant relies were decided after the complaint was filed in this case.  The motion for sanctions will be denied.

I.

The basic facts of the case are undisputed, and the evidence submitted by the parties after discovery for the most part is consistent with the allegations of the complaint, which were discussed at length in the Court's two prior opinions.

Plaintiff Rishana Tillman resides in Wayne County, Michigan.  On August 26, 2019, she filed a complaint in the Wayne County, Michigan circuit court alleging violations of her rights under the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*  The suit arose from a retail installment contract that the plaintiff executed to obtain an auto loan from defendant MCFU in January 2017.  The loan account "was charged off due to nonpayment" in June 2018.  The loan also was discharged in a Chapter 7 bankruptcy proceeding.  However, after she was granted a discharge, the plaintiff reaffirmed the debt.  Before the charge-off, discharge, and reaffirmance, the "historical" monthly payment amount specified by the loan contract was $442 per month.  However, the defendant asserts that, at present, "the entire balance [of the loan] is due and owing," because the plaintiff "failed to make the required payments" (apparently in default of her obligations under both the original and post-bankruptcy reaffirmation agreements).

The defendant received dispute notices regarding the reported trade line for the auto loan account on May 2, 3, and 10, and June 23, 2019.  MFCU asserts that it "conducted investigations" into those disputes.  It admits that it "reported the contractual monthly payment due from Plaintiff pursuant to the loan agreement to certain consumer reporting agencies," but with the qualification that it did so "before any dispute by Plaintiff."

-2-

In its opinion on the motion to dismiss, the Court noted that the pleadings included no specimen of any credit report including the allegedly erroneous tradeline.  However, the plaintiff submitted with her motion for partial summary judgment a copy of a purportedly inaccurate report from one agency.  *See* Equifax Credit Report dated Apr. 9, 2019, ECF No. 37-3, PageID.515-16. The tradeline in question includes the following details of the auto loan account: (1) an "Opened Date" of February 1, 2017, (2) a "Last Reported" date of April 1, 2019, (3) a 72-month term, and "Monthly Payment" of $442, (4) a "Date of Last Payment" on May 1, 2018, and (5) a "Balance" and "Amount Past Due" of $8,235.  *Ibid.*  The plaintiff does not assert that any of those details are inaccurate in any respect, at least, insofar as they reflect the presently unpaid and delinquent balance due, the "historical" monthly payment amount that was specified by the original loan agreement, and her history of late or missed payments.  The report also conspicuously indicates the "Account Status" as "Closed," and "Payment Status" as "Collection / Charge-off."  *Ibid.*  The report also included a miniature timeline graphic that indicated timely payments in March through June 2017, past-due status ranging from 30-90 days in August through December 2017, "Unknown" payment status throughout 2018, and "CO" status (indicating "Collection / Charge-off") for the months of January through March 2019.  *Ibid.*  Finally, the report also indicated a "Latest Status" of "Collection / Charge-Off," and it included "Remarks" noting "Reaffirmation of debt" and "Charged off account."  *Ibid.*

The lawsuit was filed in state court in August 2019 and removed to this Court on October 1, 2019.  The Court previously denied the defendant's Rule 12(b)(6) motion to dismiss, and it granted the plaintiff's motion to dismiss without prejudice a permissive counterclaim for collection of amounts allegedly owed on the reaffirmed loan agreement.  Discovery closed on August 20, 2020, and the parties filed cross-motions for summary judgment.

II.

Both sides contend that they are entitled to summary judgment.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

As a preliminary matter, the defendant raised a challenge to the plaintiff's standing to pursue her claims, premised on the absence of any substantial evidence of "actual injury" that she suffered as a result of the allegedly inaccurate reporting.  To establish standing, a plaintiff must show that he or she has suffered an "injury in fact," that was caused by the defendant's conduct, and that a favorable decision will redress that injury.  *Town of Chester v. Laroe Estates, Inc.*, --- U.S. ---, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016)).  The first requirement requires proof of an actual injury, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Ibid.*  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Ibid.*

The plaintiff testified that she suffered from "headaches," "weight loss," and "loss of sleep," provoked by worries that she would be unable to obtain new credit due to the inaccurate

-4-

reporting.  She also argues that the reporting violation alleged here is substantially likely to harm her statutorily protected interest in her credit history because it involves much more consequential details than the types of errors found to be insufficient to give rise to standing in *Spokeo* and cases following that decision.  The Court agrees.  The plaintiff has offered sufficient evidence of an injury in fact to establish Article III standing.

Moreover, where, as here, the claims plainly are devoid of merit, the defendant only raised the standing issue late in the case, after the close of discovery, and where the defendant also has urged the Court to *exercise* its jurisdiction by issuing a dispositive ruling on the claims and dismissing them *with* prejudice, rather than, as a jurisdictional dismissal must be, *without* prejudice, other federal courts have found it appropriate to bypass any jurisdictional doubts posed by the standing arguments and instead issue a ruling on the merits.  *E.g.*, *Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 547 (E.D. Mich. 2020).

Turning to the merits, the FCRA requires consumer credit reporting agencies to "'follow reasonable procedures to assure maximum possible accuracy of' consumer credit reports." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020) (quoting 15 U.S.C. § 1681e(b)).  "The statute provides consumers with a cause of action if a consumer reporting agency violates their statutorily created procedural rights."  *Ibid.*  "Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information; and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished."  *Scott v. First Southern National Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (quotations omitted).  "The FCRA creates a private right of action for consumers to enforce the requirement under § 1681s-2(b) that furnishers of information investigate upon receiving notice of a dispute, but not the requirement under § 1681s-2(a) that furnishers of

information initially provide accurate information to consumer reporting agencies." *Ibid.*  Thus, "consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s-2(b)." *Ibid.*

When a reporting entity receives notice of a dispute, it must review all pertinent information, conduct an investigation regarding the dispute, report the results of the investigation to all consumer reporting agencies, and correct and report inaccuracies. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (quoting 15 U.S.C. § 1681s-2(b)(1)).  The FCRA creates a private right of action against a furnisher who fails to satisfy or negligently or willfully breaches one of the duties identified in section 1681s-2(b).  *Ibid.*  Regardless of the particular breach alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Id.* at 629.  Thus, the required elements of a viable claim of inaccurate reporting are: "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004).

Although MCFU raises several different arguments in support of its motion for summary judgment, one is dispositive and it is not necessary to consider the others.  *See Euring v. Equifax Info. Servs., LLC*, No. 19-11675, 2020 WL 3833042, at *1 (E.D. Mich. July 8, 2020).  "Under the FCRA, plaintiff must show that defendant furnished inaccurate information to the credit reporting agencies, and defendant argues persuasively that the 'errant' tradelines at issue in this case are not inaccurate." *Ibid.*

It is well settled that, regardless of the particular breach of the FCRA that is alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Pittman*, 901 F.3d at 629.  The plaintiff's claims here founder on that essential element, because no jury reasonably could find that the tradeline in question was "inaccurate" or "misleading" in any sense.

The Sixth Circuit recently clarified the showing that must be made to sustain the element of inaccurate reporting: "[T]o state the first element of a claim [of inaccurate reporting under the FCRA], a plaintiff may allege that a CRA reported either 'patently incorrect' information about them or information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer.'" *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020) (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).  Here, the plaintiff expressly disclaims any claim of "misleading" reporting and insists that the tradeline was "patently incorrect" for the sole reason that it noted a "monthly payment" amount of $442.  The plaintiff insists that the "monthly payment" amount should have been reported as $0, because, after she defaulted on the loan, the defendant elected to charge off the account and accelerate the balance, foregoing any ongoing monthly remittances and instead declaring the entire approximately $8,000 balance due forthwith.

When the Court issued its earlier opinion denying the defendant's motion to dismiss, which principally addressed the sufficiency of the allegations of "inaccuracy," its ruling was premised on a presumed absence of any further details in the tradeline about the status of the loan.  The Court noted that the absence of any such details was assumed because no specimen of any credit report was attached with the pleadings, and no facts were alleged within the four corners of the complaint suggesting that any further clarifying information was included.  The Court noted that many federal

courts have found viable claims of inaccurate reporting where the tradeline "listed a balance owed even though the account was closed or charged off," and where it "failed to report that the account had been discharged or closed." *Franklin v. Trans Union, LLC*, No. 19-0888, 2019 WL 6871254, at *3 (C.D. Cal. Oct. 8, 2019); *see also Pittman*, 901 F.3d at 639 ("Reporting that Pittman was delinquent on his loan payments without reporting the [loan modification] implies a much greater degree of financial irresponsibility than was present here. And the existence of and Pittman's compliance with the terms of the TPP is relevant information about the status of his mortgage loan. Without this information, the Servicers' reporting was incomplete."). With its early view of the case constrained to the four corners of the pleadings, the Court found no facts apparent to distinguish this case from those. However, the complete record now presented to the Court reveals the claims in a very different light.

Now it is clear that the reporting in this case is indistinguishable from the reports in another equally consistent line of decisions where an "historical" monthly payment amount is listed on a tradeline *along with* information plainly stating that an account has been "charged off" or "closed," thus clarifying that there is no ongoing monthly payment obligation. In such cases, the reporting of the "historical" monthly payment repeatedly has been held not to be inaccurate or misleading. *Calvin v. Michigan First Credit Union*, No. 19-11519, 2020 WL 3972519, at *3 (E.D. Mich. July 14, 2020) ("Credit reports with a non-zero scheduled monthly payment balance and account status of 'charged off and closed' have been found not to be materially misleading or factually inaccurate. District courts in this circuit have found scheduled monthly payment fields to be historical and relay only what the monthly payment was before an account was charged off or closed."); *Euring v. Equifax Info. Servs., LLC*, No. 19-11675, 2020 WL 3833042, at *2 (E.D. Mich. July 8, 2020) ("[T]he reported monthly payments in the present case are not inaccurate because no one reading

plaintiff's credit reports, whether a layperson or prospective creditor, would reasonably believe that plaintiff actually owes or is making such payments. The credit reports plainly indicate that both of plaintiff's MFCU accounts were closed and charged off in 2015. Therefore, the reported monthly payments can only be understood as the amounts plaintiff had agreed to pay when the loans were extended."); *see also Taylor v. Equifax Info. Servs., LLC*, No. 20-10462, 2020 WL 3250224, at *2 (E.D. Mich. June 16, 2020) (collecting cases); *Rider v. Equifax Info. Servs. LLC*, No. 19-13660, 2020 WL 3036337, at *1 (E.D. Mich. June 5, 2020) ("Neither report is plausibly misleading or inaccurate. True, as Rider alleged in her complaint, the July 2018 report states 'scheduled paym[e]nt amount' of '$151.' And assuming Rider paid off the account, that is probably misleading. But that statement does not stand alone. On the very same tradeline the following appears: 'Balance Amount $0,' 'Date Closed 06/2015,' and 'ADDITIONAL INFORMATION – Closed or Paid Account/Zero Balance.' Taken all together, who would think Rider was still paying $151 a month to Michigan First?"); *Euring v. Equifax Info. Servs., LLC*, No. 19-11675, 2020 WL 1508344, at *5 (E.D. Mich. Mar. 30, 2020) ("Even if the Court applies plaintiff's definition of accuracy, there is nothing false or materially misleading about the 'Monthly Payment' information on plaintiff's credit reports in light of the other information that appears on those reports.").

The tradeline in this case is replete with details confirming that the "monthly payment" amount is merely historical and does not indicate any ongoing payment obligation, such as notations that the status of the account was "charged off" and "closed," and the timeline indicating the transition from "current" to "late" to "charged off," which also notes that the "latest status" was "charged off," indicating no present, ongoing monthly payment obligation. The report also indicated, which the plaintiff does not dispute, that the account had a present "balance due" equal

to the remaining unpaid principal and interest.  Nothing in the tradeline, considering all of the information reported, was in any sense "incorrect" or "misleading," and no reader of the report could have been confused about the status of the account.

In her opposition to the defendant's motion and in support of her own motion, the plaintiff repeatedly references the guidelines for credit reporting set forth in the "Credit Reporting Resource Guide," a publication produced by a creditors' trade association.  She contends that this publication establishes the "industry standard" for accurate reporting.  But the plaintiff disclaims any reliance on the "best practices" specified by the CRRG to establish the "inaccuracy" element of her claims, instead arguing that the defendant's failure to review the CRRG during its investigation of her dispute shows that it unreasonably refused to consider all "available information" about her account status.  Moreover, federal courts repeatedly have "reject[ed] [the] argument that [creditors] should report [a] $0 [monthly payment on a 'charged off' account] because this is recommended by the Credit Reporting Resource Guide," holding that "[t]he touchstone of the FCRA is accuracy," and, where other appropriate clarifying details on account status are included, "the monthly payment amounts [reported are] historically accurate." *Euring*, 2020 WL 3833042, at *2.

The plaintiff cannot make the required preliminary showing of inaccurate reporting, and both her negligent and willful claims under the FCRA therefore fail as a matter of law.  The Court will grant the defendant's motion for summary judgment.  For the same reasons, summary judgment in plaintiff's favor is precluded because the undisputed record cannot sustain the required showing on the threshold element of inaccuracy.

III.

MCFU contends that the same defect with the plaintiff's case entitles it to sanctions under Federal Rule of Civil Procedure 11 because the plaintiff and her counsel continued to pursue claims

of inaccurate reporting that have no arguable legal merit. The defendant points to several decisions by other courts in this district (decided between February and July 2020), which held that materially identical tradelines were not inaccurate or misleading and dismissed claims brought by other plaintiffs who were represented by the same counsel.

Under Rule 11(b), a party's or attorney's signature on a pleading or other court paper amounts to a certification that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). "Rule 11 sanctions may be awarded only if [the party's] conduct in the litigation was objectively unreasonable . . . or if [the party] did not have a reasonable basis for making her claim." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014) (citations omitted). Rule 11 contains a "safe harbor" provision, *see* Fed. R. Civ. P. 11(c)(2), with which the defendant complied.

At first blush, the Court's denial of the motion to dismiss certainly supplies ample basis for the "puzzlement" of plaintiff's counsel about the basis of the Rule 11 motion, since the Court in that ruling expressly held that the facts as pleaded were sufficient to state viable claims for relief under the prevailing decisional law. *Cahoo v. SAS Inst. Inc.*, No. 17-10657, 2018 WL 1477665, at *3 (E.D. Mich. Mar. 27, 2018) ("After all, 'the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case.'") (quoting *Christianburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412,

421 (1978)).  That ruling, however, was premised on the facts *as pleaded* — so far as they went.
However, facts that since have come to light have cast the claims in a far different light.

By now, the following circumstances at least are plain and undisputed on this record: (1)
the plaintiff obtained her copy of the April 2019 credit report well before filing this suit, (2) that
report plainly states details of the tradeline at issue which decisively defeat her claims, and (3)
those additional details were not alluded to anywhere in the October 2019 pleading that initiated
this lawsuit.  Those circumstances, at the very least, raise questions about (1) how thoroughly
plaintiff's counsel investigated the underlying facts before filing suit, and (2) why, if they were
known to counsel beforehand, facts concerning the additional details in the tradeline were omitted
from the pleadings.

The plaintiff certainly is not required to submit all potential evidence with her complaint,
and nothing in the law required her to attach a copy of the credit report to the complaint.  Nor is
the plaintiff required to plead all possibly relevant facts that could have some tangential bearing
on her claims (or possible defenses to them).  However, it seems unlikely that diligent counsel
would not have reviewed a credit report that was obtained by his client before filing a suit premised
on inaccurate reporting.  Knowledgeable counsel also certainly would have been aware of the
relevance of the additional details to the viability of the claims.  Those details seem to have been
conspicuously omitted from the pleadings, and, moreover, the absence of such additional details
was dispositive in this Court's ruling that allowed the case to proceed.  The record therefore
suggests a reasonable inference that the details may have been omitted for the purpose of bolstering
the viability of the claims against early dispositive motion practice, despite being premised on
claims that plainly (now) are seen to be without merit.  That inference in turn suggests questions

-12-

about whether due regard was paid by plaintiff's counsel to his duty of candor to the Court. *See* Mich. Rules of Prof. Conduct 3.3.

Nevertheless, the defendant's motion does not articulate a sufficiently compelling basis for awarding the significant sanctions that it seeks here. *First*, the adverse decisions cited by the defendant all are merely persuasive authority and were rendered well after the complaint was filed. They therefore have no bearing on whether plaintiff's counsel reasonably could have believed in October 2019 that there were colorable legal grounds for the claims pleaded here. *Second*, as noted above, the Court denied the defendant's Rule 12(b)(6) motion, affirming that, *as pleaded*, the facts in the complaint stated viable claims for relief. The record subsequently developed has undercut those claims thought previously to be viable. But, as this Court noted in *Cahoo*, the ultimate failure of a claim is not a harbinger of improper conduct under Rule 11. *Third*, the defendant has not cited any authority for the proposition that Rule 11 sanctions are appropriate where a party or her counsel merely refuse voluntarily to dismiss viably pleaded claims when subsequent rulings or development of the record suggests that they ultimately may fail. *Finally*, the arguments that the plaintiff has advanced that the reporting of a monthly payment amount was inaccurate with respect to a closed account is not so entirely devoid of plausible reasoning as to be deemed frivolous. After all, the defendant does not dispute that the "best practices" guide propounded by a major credit reporting industry trade association suggests exactly the rule of reporting for which the plaintiff here advocates. That is, at the very least, a plausible basis for a good faith belief by plaintiff's counsel that, even if the law does not currently recognize such a requirement, perhaps it should, through some future evolution.

The defendant contends that sanctions are appropriate to deter the filing of future suits on similar claims by the same counsel. But presumably the representation here was undertaken on a

contingent fee basis, and the failure of any recovery to offset the loss of expenditures on legal work undertaken to develop and litigate this case ought to serve sufficiently to convince plaintiff's counsel that filing materially identical claims in the future would be a losing proposition.

Rule 11 sanctions are not appropriate here.

IV.

The undisputed facts demonstrate that the plaintiff cannot prove all the elements of her claim under the Fair Credit Reporting Act.  Defendant Michigan First Credit Union therefore is entitled to summary judgment of dismissal.

Accordingly, it is **ORDERED** that the defendant Michigan First Credit Union's motion for summary judgment (ECF No. 35) is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 37) is **DENIED**.

It is further **ORDERED** that the defendant's motion for sanctions (ECF No. 43) is **DENIED**.

It is further **ORDERED** that the pending motions *in limine* (ECF No. 52, 54, 56) are **DISMISSED as moot**.

The plaintiff is directed to either voluntarily dismiss or move against the defendant in default, Security Auto Loans, Inc. **on or before April 22, 2021**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:  April 5, 2021

-14-